UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------
```
POPPINGTON, LLC and
RAQUEL HORN,

       Plaintiffs,

   -against-

EDWYNA BROOKS and
JOHN DOE 1-10,

      Defendants.
```
------------------------------
```

20-cv-8616 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.


    Before the Court is another skirmish in the ongoing legal battle between the novelist Edwyna Brooks and her former production partners in the film adaptation of her novel Mafietta. In the last episode, this Court resolved a dispute over authorship of the Mafietta production, holding after a three-day bench trial that Ms. Brooks was entitled to sole authorship, and that Damon Dash and his company, Poppington LLC, had simply been hired by Ms. Brooks to provide directorial, marketing, and other services. See Brooks v. Dash, No. 19-cv-1944 (JSR), 2020 WL 2521311 (S.D.N.Y. May 16, 2020) aff'd --- Fed. App'x ---, 2021 WL 2816727 (2d Cir. July 7, 2021). Now, Poppington (a company of which Dash is the CEO) and Raquel Horn (a member of Poppington) bring a one-count complaint against

- 1 -

Brooks alleging that Brooks infringed Poppington's copyright in a photograph taken by Horn during the production of <u>Mafietta</u> by using that photograph without authorization on the cover of one of Brooks' novels.

Before the Court is Brooks' motion to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2), for insufficient service of process under Rule (12)(b)(5), and for failure to state a claim under Rule 12(b)(6). The Court held an evidentiary hearing on the 12(b)(2) and 12(b)(5) motions and issued a bottom-line order denying Brooks' motion as to personal jurisdiction and service of process. <u>See</u> ECF 38. <u>Cf.</u> <u>Mones v. Commercial Bank of Kuwait, S.A.K.</u>, 204 Fed. App'x. 988, 989-90 (2d Cir. 2006) ("[T]he district court erred in failing to determine whether it had valid personal jurisdiction over [defendant] before proceeding to the merits of [plaintiff's claim.]"). Now, after hearing argument on the Rule 12(b)(6) aspects of the motion, the Court denies the motion in full for the reasons set forth below.

## I.   <u>THRESHOLD ISSUES</u>

Brooks moved for dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and under Fed. R. Civ. P. 12(b)(5) for deficient service of process. As noted, the Court has already denied these aspects of Brooks' motion in a bottom-

line order. <u>See</u> ECF 38. It now elaborates the reasons for this denial.

## A.    <u>Personal Jurisdiction</u>

Brooks, who is not a New York resident, moves to dismiss the complaint for lack of personal jurisdiction, arguing that she "has no contacts at all with the State of New York." Mot. 12. Plaintiffs respond that specific personal jurisdiction exists because their lawyer was able to purchase a copy of <u>Mafietta</u> through Amazon.com and have it shipped to New York. Pl. Opp., ECF 32 at 4.

Determining personal jurisdiction in New York involves a two-step analysis: first, the Court must determine whether jurisdiction exists under New York's general jurisdiction or long-arm statute; then, if the statutory requirements are satisfied, the Court proceeds to determine whether the exercise of personal jurisdiction comports with the Due Process Clause. <u>Minnie Rose LLC v. Yu</u>, 169 F. Supp. 3d 504, 512 (S.D.N.Y. 2016). But since the due process analysis "overlaps significantly" with the analysis under New York's long-arm statute, the Court will here treat them together. <u>See</u> <u>id.</u> at 515 (citing <u>Best Van Lines, Inc. v. Walker</u>, 490 F.3d 239, 247 (2d Cir. 2007)).

CPLR § 302(a)(1), New York's long-arm statute, provides for specific personal jurisdiction over any non-domiciliary that "transacts any business within the state or contracts anywhere

to supply goods or services in the state." "New York courts
define 'transacting business' as purposeful activity—'some act
by which the defendant purposefully avails itself of the
privilege of conducting activities within the forum state, thus
invoking the benefits and protections of its laws.'" Best Van
Lines, 490 F.3d at 246. "Proof of one transaction in New York is
sufficient to invoke jurisdiction, even though the defendant
never enters New York, so long as the defendant's activities
here were purposeful and there is a substantial relationship
between the transaction and the claim asserted." Eades v.
Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015).

Plaintiffs correctly argue that someone subjects herself to
personal jurisdiction in New York by conducting retail sales and
shipping goods into the state. The Second Circuit has found, for
instance, that the "single act of shipping a counterfeit ... bag
might well be sufficient, by itself, to subject [a defendant] to
the jurisdiction of a New York court under section 302(a)(1)."
Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170 (2d
Cir. 2010). Brooks does not contest that she maintains a website
through which she advertises and sells the Mafietta series. Nor
does she dispute that the website contains hyperlinks through
which buyers in New York can purchase the Mafietta books.
Indeed, counsel for Plaintiffs purchased the book through
Brooks' author page on Amazon.com and had it shipped to New

- 4 -

York. See ECF 31 ¶ 9; ECF 31-6. If the sales transaction initiated by clicking the link on Brooks' website was consummated on the site, the transacting business inquiry would likely end there and support finding personal jurisdiction over Brooks.

The complicating factor -- on which the defendant hangs her hat -- is that Brooks' book sales are effectuated not through her website but through Amazon.com, a third-party. See ECF 31 ¶ 9. When a potential buyer clicks the link to purchase a book on Brooks' website, they are redirected to a purchase page on Amazon.com. Amazon, not Brooks, handles the logistics of printing, collecting payment for, and shipping the books.

Where sellers use a third party like Amazon or eBay to sell their goods into New York, courts in this district have drawn a distinction between occasional sellers who use a third-party to sell a good to a buyer who happens to be in the forum state, and commercial vendors who use the third party to establish regular business with the state. Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC, 2016 WL 3748480, at *3 (S.D.N.Y. Jul. 8, 2016). Jurisdiction is proper as to sellers in the latter category. Id.; compare EnviroCare Tech. LLC v. Simanovsky, 2012 WL 2001443 (E.D.N.Y. Jun. 4, 2012) (finding jurisdiction where defendants sold infringing products nationwide, in at least 46,000 separate transactions, and exclusively through Amazon and

eBay), with Boschetto v. Hansing, 539 F.3d 1011, 1019 (9th Cir. 2008) (finding no jurisdiction because the plaintiff did "not allege that any of the Defendants [were] using eBay to conduct business generally").

Brooks' purpose and volume of sales place her in the latter category of commercial vendors conducting regular business through Amazon, thereby creating the factual predicate for this Court to exercise personal jurisdiction. As she testified, Brooks uses Amazon so that she personally does not "have to deal with inventory and mailing" to foreign buyers but can still reap the rewards of her sales to them. June 22, 2021 Evidentiary Hearing Transcript 19:8-9. Brooks sells her books exclusively through Amazon and estimates that she has sold 1,500 books through the platform in the last 5 years. Even though Brooks did not personally manage the individual transactions fulfilled through Amazon, her internet activities sought to -- and did -- establish regular business with foreign jurisdictions, including New York. That plaintiffs' counsel purchased the allegedly infringing book through Amazon and had it shipped to New York creates the requisite nexus between Brooks' Amazon sales, a New York transaction, and the claim asserted. See Eades, 799 F.3d at 168. Accordingly, specific personal jurisdiction over Brooks is proper under § 302(a)(1), and the Court's exercise of that jurisdiction comports with the Due Process Clause.

B.    __Service of Process__

Brooks also moves to dismiss the complaint under Rule 12(b)(5) for insufficient service of process. Plaintiffs filed an affidavit of service on March 31, 2021, where a process server swore that he served Anthony Brooks, the defendant's husband, at their home in Hawaii. ECF 21 & 22. Anthony Brooks, however, affirmed that "no one gave [him] any documents on March 31, 2021 at any time." ECF 25.

A process server's sworn statement of service creates a presumption that service has been effectuated in the manner so described. Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002). A defendant's affidavit denying service can "rebut[] the presumption of proper service established by the process server's affidavit and necessitate[ ] an evidentiary hearing," assuming that "the defendant swear[] to specific facts to rebut the statements in the process server's affidavits." Id. In such situations, the plaintiff bears the burden of establishing proper service by a preponderance of the evidence. Skyline Agency, Inc. v. Ambrose Coppotelli, Inc., 502 N.Y.S.2d 479, 483-484 (2d Dep't 1986).

Having received the competing affidavits, the Court convened an evidentiary hearing and heard testimony from the process server and Mr. Brooks. At the hearing, Mr. Brooks clarified that the process server did show up at his house on

March 31, 2021 and attempt to serve him with the relevant legal
documents. Mr. Brooks refused to take the documents, however,
forcing the process server to leave them at the doorstep.

Under the circumstances, depositing the relevant legal
documents at the Brooks' doorstep suffices for proper service.
Under Fed. R. Civ. P. 4(e)(2)(B), service can be effectuated by
"leaving a copy of each at the individual's dwelling or usual
place of abode with someone of suitable age and discretion who
resides there." Where, as here, "the defendant attempts to evade
service or refuses to accept delivery after being informed by
the process server of the nature of the papers, it usually is
sufficient for the process server to touch the party to be
served with the papers and leave them in defendant's presence
or, if a touching is impossible, simply to leave them in the
defendant's physical proximity." 4A Wright & Miller, Federal
Practice and Procedure, § 1095 (3d ed. 2002). Accordingly,
Brooks has been properly served, and the Rule 12(b)(5) leg of
her motion is denied.

## II.  <u>Failure to State a Claim</u>

The court now turns to the prong of Brooks' motion seeking
the complaint's dismissal for failure to state a claim. First,
she asserts the doctrine of <u>res judicata</u>, arguing that
Poppington's complaint is barred by both issue preclusion and
claim preclusion. Brooks also asserts authorship of the photo

under two copyright doctrines -- derivative work and work made for hire -- arguing that Horn is not entitled to claim copyright over the photograph in question. Brooks fails to explain how any of these doctrines applies to the facts alleged in the Complaint.

Before discussing these arguments, however, reference must be made to another possible problem that, while never raised by Brooks, cannot be ignored by the Court. This problem is that the Complaint fails to allege that the photograph's copyright is registered with the U.S. Copyright Office. Registration is an indispensable prerequisite to a plaintiff having the statutory standing to bring an infringement action. See 17 U.S.C. § 411(a). The Complaint does allege that Horn has filed a "pending" copyright registration application. See ECF 1 ¶ 1. But the Supreme Court has squarely held that a copyright application alone does not create standing to bring an infringement action. Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 886 (2019). This fundamental failure would ordinarily justify dismissal. But doing so here would likely lead only to an amended complaint, since the official records of the Copyright Office confirm that the photograph is, in fact, registered with the Copyright Office. Therefore, in the interest of judicial economy, the Court will take judicial notice of the

copyright registration and excuse Plaintiffs' failure to plead
that basic element of an infringement claim.

**A.**   **Res Judicata**

Turning to Brooks' own arguments, Brooks first argues that
the instant suit is barred by doctrines of issue preclusion
(also known as collateral estoppel) and claim preclusion, "which
are collectively referred to as 'res judicata.' Under the
doctrine of claim preclusion, a final judgment forecloses
successive litigation of the very same claim, whether or not
relitigation of the claim raises the same issues as the earlier
suit." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (internal
quotation marks and citations omitted). Issue preclusion, by
contrast, "bars successive litigation of an issue of fact or law
actually litigated and resolved in a valid court determination
essential to the prior judgment, even if the issue recurs in the
context of a different claim." Id. "A court may consider a res
judicata defense on a Rule 12(b)(6) motion to dismiss when the
court's inquiry is limited to the plaintiff's complaint,
documents attached or incorporated therein, and materials
appropriate for judicial notice." TechnoMarine SA v. Giftports,
Inc., 758 F.3d 493, 498 (2d Cir. 2014).

1.   Issue Preclusion

Brooks' motion to dismiss recites the rule for issue
preclusion, suggesting without specific analysis that the

doctrine undermines the claims brought by Horn and Poppington in this suit. Mot. 8-9. This is not enough to carry her burden of establishing the affirmative defense.

Issue preclusion bars litigation of an issue where: "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013) (quoting Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir.2006)). As relevant here, "[t]he burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion." Id. (quoting Kulak v. City of New York, 88 F.3d 63, 72 (2d Cir. 1996)). Here, Brooks invokes issue preclusion without identifying the specific issue she seeks to estop Horn and Poppington from litigating. Therefore, Brooks cannot establish the affirmative defense of collateral estoppel.

2.   Claim Preclusion

Brooks also argues that the instant copyright infringement suit is barred by claim preclusion because "Poppington LLC was legally obligated to add the dispute to the litigation in Brooks v. Dash, [19-cv-1944 (JSR)]." Mot. 11. "Under claim preclusion,

a final judgment forecloses successive litigation of the very
same claim, whether or not relitigation of the claim raises the
same issues as the earlier suit. The doctrine precludes not only
litigation of claims raised and adjudicated in a prior
litigation between the parties (and their privies), but also of
claims that might have been raised in the prior litigation but
were not." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees,
Inc., 779 F.3d 102, 107–08 (2d Cir. 2015). The party invoking
the affirmative defense of claim preclusion "'must show that
(1) the previous action involved an adjudication on the merits;
(2) the previous action involved the plaintiffs or those in
privity with them; [and] (3) the claims asserted in the
subsequent action were, or could have been, raised in the prior
action.'" TechnoMarine, 758 F.3d at 499 (quoting Monahan v.
N.Y.C. Dep't of Corr., 214 F.3d 275, 285 (2d Cir.2000)).
Plaintiffs dispute the second and third elements.

    With respect to the second element, Plaintiffs point out
that co-plaintiff Horn was not a party to the prior action and
states that "there is no evidence (in any of the submissions)
that suggests there is privity between plaintiff Horn and that
of ... Poppington LLC such that Poppington could have registered
a copyright for the photo and plead its own claim for copyright
infringement in the prior action." Mot. 7. However, 2020
California Department of State records list Horn as a member of

Poppington. See ECF 35-1. Moreover, the Complaint alleges that Horn "assigned [the photograph] to Poppington LLC." ECF 1 ¶ 8. The Second Circuit has adopted a flexible definition for privity in the claim preclusion context: "The issue is one of substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis." Alpert's Newspaper Delivery Inc. v. The New York Times Co., 876 F.2d 266, 270 (2d Cir. 1989). Horn's relationship to Poppington, a defendant in the prior case, would appear to satisfy the second element of claim preclusion.

However, there is no need to decide whether Horn is subject to preclusion under the doctrine of privity, because Plaintiffs convincingly dispute the third element, i.e., whether the claims were or could have been brought previously. At a basic level, Brooks fails to establish that the instant copyright claim should have been litigated in the first episode of this legal battle. Brooks argues that Horn first raised the issue of the photograph's use on the book cover on July 15, 2019, before discovery closed in Brooks v. Dash, and that Dash/Poppington should have brought an infringement claim at that time, since they knew the claim was related to the prior dispute.[1] However,

---

[1] Brooks relies on emails docketed in Brooks v. Dash to establish this timeline. See Mot. 11 (citing Brooks v. Dash, 19-cv-1944 (JSR), ECF 107-1). The Court assumes, without deciding,

Brooks cites no authority and provides no explanation for why Poppington, one of the defendants in Brooks v. Dash, and Horn, a non-party to the prior suit, were required to litigate this photographic copyright issue as a counterclaim when Brooks sued to establish authorship of the film adaptation of Mafietta.

Plaintiffs also successfully resist the third element of claim preclusion by arguing that the instant infringement claim was not available before the prior judgment, since Horn had not yet registered the copyright. The Second Circuit has explained that "[w]hether a claim that was not raised in the previous action could have been raised therein 'depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'" TechnoMarine, 758 F.3d at 499 (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir.1992)). Crucially, in this context "claim preclusion will not bar a suit ... 'based upon legally significant acts occurring after the filing of a prior suit that was itself based upon earlier acts.'" TechnoMarine, 758 F.3d at 501 (quoting Waldman v. Village of Kiryas Joel, 207 F.3d 105, 113 (2d Cir.2000)).

---

that it can take judicial notice of this record. See TechnoMarine, 758 F.3d at 498.

Plaintiffs point out that Horn did not register her copyright in the photograph until _after_ the prior judgment was rendered. Opp. 8. Therefore, Plaintiffs correctly maintain that the instant infringement claim could not have been brought in the prior suit, because, as discussed above, copyright registration is a necessary prerequisite of a copyright infringement claim. See 17 U.S.C. § 411(a). Brooks' offers no authority to support her response–that the allegedly infringing conduct occurred before the prior judgment and that Horn was obliged to have registered the copyright at the time she discovered the infringement. The Court must therefore reject Brooks' claim preclusion argument, since the copyright was not registered until _after_ the prior judgment was rendered, and the registration was a "legally significant act" for the infringement claim. Therefore, Plaintiffs are not precluded from pursuing the instant infringement claim.

**B.   Failure to State a Claim**

Brooks argues that Horn and Poppington fail to state a claim for infringement because they purportedly lacked the legal right to copyright the photograph in question. Brooks makes two arguments under this heading. First, she argues that the photograph, which was taken on the set of the Mafietta film production, is a derivative work, and so she possesses derivative rights in the photograph that prevent Horn from

asserting her own copyright. Second, Brooks argues that since
Horn was paid $600 to perform photography services on the
Mafietta set, Brooks is entitled to copyright the photograph
under the "work made for hire" doctrine.

   1.   Derivative Work

   First, Brooks argues that Horn could not have legally
copyrighted the photograph taken on set, because it is a
derivative work of her registered copyright in Mafietta. Mot.
16. However, this argument amounts to a mere assertion. Brooks
does not engage with the relation between her own copyright and
the photograph that she contends is derivative. Argument about
the relationship between the photograph and Brooks' authorship
of Mafietta may not be possible in this posture, but it is
undoubtedly necessary to establish Brook's entitlement to the
photograph's copyright.[2] An author has a copyright in derivative
works only to the extent of the preexisting material, and a new
author can register a copyright in a derivative work to the
extent that person contributed new material. 17 U.S.C. § 103(b).
see also Earth Flag Ltd. v. Alamo Flag Co., 153 F.Supp.2d 349,
353 (S.D.N.Y.2001) ("Although derivative works are protectible,

_____

   [2] As discussed in connection with Brooks' work made for hire
argument, the copyright registration establishes a rebuttable
presumption that Horn is the photograph's author. See infra at
19; 17 U.S.C. § 410(c).

copyright protection extends only to the non-trivial, original contributions of the derivative work's author."). There are tricky questions involved in the relationship between the Mafietta copyright and the photograph taken on set, including that they are in different media and the extent of originality involved in the photography. Cf. Earth Flag Ltd., 153 F.Supp.2d at 354. But Brooks addresses none of these issues. In any event, Brooks' central contention -- that "a derivative work[] cannot be protected by copyright without the permission of the original copyright owner" -- is a "contention [with] no basis in law." Keeling v. New Rock Theater Prods., LLC, 2011 WL 1899762, at *1 (S.D.N.Y. May 17, 2011). Accordingly, the Court will not dismiss the complaint because the photograph was allegedly derivative of Mafietta.

> 2. Work Made For Hire

Second, Brooks argues that she is entitled to copyright the photograph under the "work made for hire" doctrine, because she paid Horn $600 to take photographs on the Mafietta set, as documented by a register of expenses entered into evidence at the Brooks v. Dash trial. This contention too fails.

To start, the Court is bound to presume that Horn is the author. The copyright registration application filed as an attachment to the Complaint includes a certification dated April 25, 2020 specifying Horn as the "Author/Owner" of the

photograph, which is described as having been completed in 2015 and first published on January 1, 2016. See ECF 2 at 4. Horn was bound to specify on that application if the photograph had been a work made for hire. See 17 U.S.C. § 409(4).[3] Since the registration indicates it was made within five years of the first publication of the work, 17 U.S.C. § 410(c) requires that "[i]n any judicial proceedings the certificate of ... registration ... shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." The Court does, however, retain discretion to give the statements made in the certificate only as much weight as it deems appropriate. Id. Nonetheless, the Copyright Act requires that Brooks bear the burden of rebutting Horn's authorship.

But Brooks has not provided the facts necessary to establish that the photograph is a work made for hire. Under 17 U.S.C. § 101, a "work made for hire is either a work 'prepared by an employee within the scope of his or her employment' or certain types of 'specially ordered or commissioned' work, so long as the parties agree in writing that the work will be considered a work made for hire." Waite v. UMG Recordings, Inc., 450 F. Supp. 3d 430, 434 (S.D.N.Y. 2020) (emphasis added);

---

[3] Indeed, the Copyright Office database entry for No. VA0002202766 indicates that the form used for submission is inappropriate for works made for hire.

accord <u>Gary Friedrich Enterprises, LLC v. Marvel Characters,</u>
<u>Inc.</u>, 716 F.3d 302, 310 (2d Cir. 2013). While Brooks has cited a
<u>Brooks v. Dash</u> trial exhibit indicating that the <u>Mafietta</u>
production enterprise paid Horn $600 to take photographs on set,
<u>cf.</u> <u>supra</u> n. 1, Brooks has not claimed that a written agreement
exists governing Horn's photography, let alone a written
agreement with a work made for hire provision. Nor has Brooks
suggested that Horn took the photographs pursuant to an
employer-employee relation. Brooks has thus failed to establish
that the photograph was a work made for hire.

### III. <u>Conclusion</u>

For the reasons set forth above, Brooks' motion to dismiss
is DENIED in its entirety.


        SO ORDERED.

Dated:    New York, NY

        July 27, 2021              JED S. RAKOFF, U.S.D.J.