UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POPPINGTON LLC and RAQUEL HORN,

Plaintiffs,

-v-

EDWYNA BROOKS,

Defendant.

20-cv-8616 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

Now before the Court are cross-motions for summary judgment in this copyright infringement suit. The action concerns a photograph taken by plaintiff Raquel Horn on the set of the film Mafietta, which was based on a self-published novella of the same name by defendant Edwyna Brooks. Horn and the production company of which she is a managing member, co-plaintiff Poppington LLC, allege that Brooks used the photograph without authorization on the cover of one of her novels.

The Court has considered the papers and oral argument from counsel. On that basis, it now denies plaintiff's motion for summary judgment in full. The Court further grants Brooks's motion for summary judgment in part, insofar as it seeks (i) dismissal of plaintiffs' complaint, (ii) a declaration that she is the owner of the disputed photograph taken by Horn on the set of the film Mafietta, see ECF 40 at 19, and (iii) an injunction prohibiting Horn and Poppington from again attempting to register a copyright of that photograph. Brooks's

motion for summary judgment on her own counterclaim is, however, denied.

## I. Undisputed Material Facts

Brooks is the author of the Mafietta series of novellas, which she made into a short film with the assistance of Horn, Horn's fiancé Damon Dash, and Horn and Dash's company Poppington. The film was shot in July-August 2015. ECF 66-1 ("Pls. Resp. Def. SOF") ¶ 4. As part of prior litigation over the film's copyright, this Court determined that Brooks was the sole author and in April 2020 issued a $300,000 judgment in Brooks's favor and against defendants Dash and Poppington. Id. ¶ 12. The Court also entered an injunction providing that "defendants are permanently enjoined from marketing, advertising, promoting, distributing, selling, or copying the film without Brooks' consent." Brooks v. Dash, 19-cv-1944 (JSR), ECF 71 at 21.

Horn was hired to work on the set of the Mafietta film and paid $600. Id. R56 ¶ 8. According to Brooks, Horn's job included photographing the actors during filming to assist in maintaining wardrobe continuity. ECF 61 ("Def. SOF") ¶ 8. Horn provided her own camera and lenses. Pls. Resp. Def. SOF ¶ 9. Neither party alleges that there was a written agreement related to this work. Horn produced several hundred photos on set. Pls. Resp. Def. SOF ¶ 9. Plaintiffs, citing Horn's affidavit, dispute that Horn was ever hired to perform photography or wardrobe services. Pls. Resp. Def. SOF ¶ 7. Plaintiffs insist that "while Horn was on set, she took hundreds of photos of film characters, family members, and random assortment of other things

that she found interesting or artistically pleasing to capture whenever she felt inspired to take them. Horn was under no compulsion or agreement to do any of the foregoing." Id. ¶ 9.

On or about October 7, 2015, Brooks released a self-published book on Amazon entitled Mafietta: The Trilogy, the cover of which is the object of the Complaint, along with a movie poster for the Mafietta film. Id. ¶¶ 16-17. Brooks's position is that her designer, Candice Kiglore, created the movie poster and book cover using still imagery taken from the raw camera footage, which was operated by Director of Photography Craig Theiman. Def. SOF ¶¶ 15-16. Plaintiffs allege that the image used on the movie poster and book cover was a photograph taken by Horn on the Mafietta set. Pls. Resp. Def. SOF ¶ 16.

The parties dispute whether Horn ever provided Brooks with any of the photographs she took on set. Horn asserts in a declaration (but not in her Rule 56 statement of facts), and somewhat contrary to her deposition, that she texted Brooks the photo at issue. See Declaration of Raquel Horn, ECF 67-1 at 3. Brooks denies this, arguing that no supporting text messages were produced in this case. See ECF 65 at 31-32. Moreover, Horn elsewhere acknowledges that she never provided the photographs to Brooks, and that Brooks first requested them in 2021. Pls. Resp. Def. SOF ¶ 22.

Horn filed for copyright registration of the photograph alleged to have been the source for the book cover in April 2020, shortly after the Court issued its judgment in Brooks v. Dash. ECF 71 ("Pls. SOF") ¶¶ 6, 11. Horn avers she subsequently assigned the copyright to

Poppington, LLC, though defendants deny this, as no assignment documents were produced in discovery. Id. ¶¶ 6-7.

The parties dispute whether Horn ever published the photograph. In her deposition, Horn could not recall where she purportedly published the photo. See ECF 65 at 30. But on summary judgment, Horn filed an affidavit stating that she published the photo on her Instagram account. See ECF 67-1 at 3. Yet Horn has adduced no evidence to support this assertion. Horn's statements in the subsequent declaration conflicting with her lack of memory at the deposition should be struck, since "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). See also Perma Rsch. & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). In light of Horn's deposition answers, Brooks argues that the date of first publication asserted on Horn's copyright registration form, January 1, 2016, is false, and that Horn in fact never published the photograph anywhere.[1] See ECF 65 at 29-32.

[1] Brooks attacks Horn's copyright registration for this allegedly false date of first publication. ECF 65 at 29-32. But even if Horn's copyright filing contained an inaccuracy, Brooks fails to explain why "the inaccuracy of the information, if known, would have caused the

## II. Procedural Background

The complaint alleging a sole copyright infringement claim was filed October 15, 2020. ECF 1 ("Compl."). After problems with service, Brooks filed a motion to dismiss for failure to serve and failure to state a claim. ECF 24. The Court held an evidentiary hearing on the service-related prong of the motion on June 11, 2021 and ultimately denied the motion in full on July 27. ECF 39. Brooks filed an answer with three counterclaims on August 4, 2021, ECF 40, and the Court denied the Poppington Parties' motion to dismiss the counterclaims on September 22, 2021, ECF 52. The motions for summary judgment were filed November 8, 2021.

## III. Discussion

Much of the factual record remains in dispute. Nonetheless, the Court determines that it can grant summary judgment in Brooks's favor based on her argument that the disputed photograph is a derivative work of her film Mafietta, and so she is its rightful owner. This conclusion suffices to dispose of plaintiff's sole infringement claim and to provide partial relief on Brooks's third counterclaim.

### A. Inadequate Pleading

As a preliminary matter, the complaint could be dismissed for inadequate pleading. It is undisputed that the infringement alleged in the complaint concerns the cover for the book Mafietta: The Trilogy.

---

Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(B). The Court accordingly declines to invalidate the copyright on this ground.

However, the complaint never names this book. See generally ECF 1. Instead, the complaint alleges infringement by the earlier book Mafietta: Rise of a Female Boss, published in March 2015. Compl. ¶ 9. It is undisputed that Horn had never worked with Brooks in any capacity before July 2015. Pls. Resp. Def. SOF ¶ 5. The infringement expressly alleged in the complaint itself is therefore factually impossible. This is sufficient to grant defendant's motion on the complaint's sole infringement claim and dismiss the complaint.

Nonetheless, plaintiffs attached an image of the cover of Mafietta: the Trilogy to their complaint, and it has been obvious to all parties and the Court throughout this case that the plaintiffs intended to sue on Mafietta: The Trilogy. The Court will therefore treat the complaint as alleging as much and proceed to analyze the merits of the claim and counterclaims on that basis.

**B. Plaintiff's Copyright Infringement Claim**

"To establish a claim of copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Abdin v. CBS Broad. Inc., 971 F.3d 57, 66 (2d Cir. 2020). To prove the second, copying, element, a plaintiff must prove that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]." Id. "The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would

be disposed to overlook them, and regard the aesthetic appeal as the same." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 111 (2d Cir. 2001).

a. Copying & Access

"Actual copying may be established by direct or indirect evidence. Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material, and that there are similarities between the two works that are probative of copying," Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 51 (2d Cir. 2003). Proving "access" requires more than "mere speculation or conjecture.... In order to support a claim of access a plaintiff must offer significant, affirmative and probative evidence." Id. at 51. For instance, a chain of "hypothetical transmittals" or "theoretical possibilit[ies]" are "legally insufficient to prove access." Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 354 (4th Cir. 2001). However, a "copyright infringement plaintiff need not prove that the infringer actually saw the work in question; it is enough to prove that the infringer (or his intermediary) had the mere opportunity to see the work and that the subsequent material produced is substantially similar to the work." Jorgensen, 351 F.3d at 55.

The parties dispute the facts from which actual copying could be established. Plaintiffs cite no direct evidence that Brooks's book cover was produced by actually copying Horn's photo, and Brooks insists that there was no actual copying. See Def. Resp. Pls. SOF ¶ 9. Nor is

there adequate indirect evidence of copying. True, the challenged portion of the book cover is substantially similar to Horn's photo. See Yurman Design, Inc., 262 F.3d at 111. But the photographs entered into the record demonstrate that Horn was photographing the set alongside the film camera, so it is plausible that, as Brooks's Rule 56 statement claims, the Mafietta book cover could look very similar to Horn's photograph but not be an actual copy because the designer used a still image from the raw movie footage. See Pls. Resp. Def. SOF ¶¶ 16, 21.

In any event, there is a genuine dispute over whether Horn ever provided Brooks access to her photograph before this lawsuit commenced, so on the current record plaintiffs cannot make out a undisputed case for copying, since the "theoretical possibility" of access is legal insufficient. See Jorgensen, 351 F.3d at 51; Bouchat, 241 F.3d at 354. Plaintiffs therefore cannot establish that copying occurred. This is sufficient to deny plaintiffs' motion for summary judgment with respect to their copyright infringement claim.

b. Ownership

Brooks insists that she is the rightful owner of Horn's photograph, either because the photo was taken as a work-for-hire or because it is a derivative work of the Mafietta film. If so, then Horn's would be prohibited from claiming ownership of the photograph, and there cannot have been any infringement.

However, the Court is bound to presume that Horn is the author. The copyright registration application filed as an attachment to the

Complaint includes a certification dated April 25, 2020 specifying Horn as the "Author/Owner" of the photograph, which is described as having been completed in 2015 and first published on January 1, 2016. See ECF 2 at 4. Horn was required to specify on that application if the photograph had been a work made for hire, and did not so indicate. See 17 U.S.C. § 409(4). Since the registration indicates it was made within five years of the first publication of the work, 17 U.S.C. § 410(c) requires that "[i]in any judicial proceedings the certificate of… registration… shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."

It is true that the Court has discretion to give the statements made in the certificate only as much weight as it deems appropriate. Id. But in any event, the record does not support that the photograph is a work made for hire. Under 17 U.S.C. § 101, a "work made for hire is either a work 'prepared by an employee within the scope of his or her employment' or certain types of 'specially ordered or commissioned' work, so long as the parties agree in writing that the work will be considered a work made for hire." Waite v. UMG Recordings, Inc., 450 F. Supp. 3d 430, 434 (S.D.N.Y. 2020) (emphasis added); accord Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d 302, 310 n. 5 (2d Cir. 2013) (work for hire doctrine requires signed written instrument). While Brooks asserts in conclusory fashion that Horn was her employee, simply because Brooks paid her, there are no indicia of employment. While a work made for hire may arise from a special order or commission, the parties dispute whether Horn took the photos

pursuant to payment from Brooks or if Horn took them of her own accord. But Brooks nowhere contends that she obtained a signed, written instrument confirming that the photographs would be subject to a work for hire arrangement. Since absence of a written agreement is fatal to a work for hire claim, plaintiffs are correct that Brooks does not own the photograph under the work-for-hire doctrine.

However, Brooks separately asserts that she owns the photograph as a derivative work of the film Mafietta. The Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a ... motion picture version, ... art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" 17 U.S.C. § 101. The owner of a copyright has the exclusive right to prepare or authorize the preparation of derivative works. Id. § 106(2).

Brooks argues that Horn's photograph is derivative of the Mafietta copyright because it was taken on the Mafietta set and depicts an actor portraying the main character of her Mafietta series, "Clarke." See ECF 60 at 21-22. Courts have recognized that visual representations of characters from films can be derivative works of the film "to the extent that such characters are sufficiently distinctive" and the allegedly infringing images reflect those distinctive aspects of a character's cinematic depiction. Warner Bros. Ent. v. X One X Prods.,

644 F.3d 584, 597 (8th Cir. 2011). See also Gracen v. Bradford Exch., 698 F.2d 300, 302 (7th Cir. 1983) (paintings depicting Dorothy/Judy Garland from The Wizard of Oz were derivative works of the film, because they were based on the painter's recollection of Dorothy and photographs of the character in the film).

Plaintiffs effectively fail to respond to the substance of Brooks's derivative work argument, except to say that Horn allegedly created the photograph "using her 'photographic expression.'" ECF 66 at 12. But, at least insofar as a comparison of the photograph and the stills from the Mafietta footage reflect, that expressiveness is not readily discernible. Compare ECF 2-1 at 2 (photograph) with ECF 40 at 12-13 (film stills and photograph of film set). Horn's photograph depicts the character of Clarke, including the distinctive aspects of her cinematic depiction, just as she appears in the film Mafietta. Even viewing the evidence in the light most favorable to plaintiffs, the photograph is clearly "a work based upon [a] preexisting work[]," 17 U.S.C. § 101.

The Court therefore holds that the photograph is a derivative work of the Mafietta film, of which Brooks is the sole author and copyright holder, so Brooks has the exclusive right to copyright the photograph. Without any entitlement to assert ownership of the photo, Horn's copyright infringement claim fails. This is sufficient to grant defendants' motion for summary judgment on plaintiffs' claim.

c. Damages

Brooks also contends that the record undermines any basis for damages that plaintiffs might assert, even assuming arguendo they could prove that Brooks's book cover infringed their purported copyright. The Court agrees and holds that even if plaintiffs could prove infringement, they would be entitled to no money damages.

Copyright infringement plaintiffs may elect, at any time before final judgment, to recover either statutory or actual damages arising from the infringement and the infringer's profits. 17 U.S.C. § 504(c)(1). Statutory amounts vary depending on conduct. Claims for profits "attributable to the infringement" are in addition to actual damages, and "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id. at § 504(b).

The Copyright Act prohibits an award of statutory damages and attorneys' fees for either: "(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C.A. § 412. Therefore, "[b]y its terms, § 412 imposes a bar to recovering statutory damages if a defendant can show that any infringement began before the

registration of the works in question." Sullivan v. Flora, Inc., 936 F.3d 562, 572 (7th Cir. 2019); accord May v. Sony Music Ent., 399 F. Supp. 3d 169, 174 (S.D.N.Y. 2019) ("Section 412 of the Copyright Act imposes a bright-line rule barring the recovery of statutory damages and attorneys' fees for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration.").

Here, plaintiffs allege that Brooks's first infringement occurred in October 2015, upon publication of Mafietta: The Trilogy. This was approximately 4.5 years before Horn registered the photograph, in April 2020. While it is disputed whether Horn ever published the photograph -- she testified during her deposition that she had no memory of having published it, see ECF 65 at 18-19 -- the copyright registration submitted by plaintiffs lists the first date of publication as January 1, 2016 and the effective date of registration as April 25, 2020. It is therefore undisputed that the alleged infringement began when the photograph was unpublished and before the registration's effective date. Accordingly, plaintiffs are foreclosed from obtaining statutory damages.

Defendants also argue in their motion that plaintiffs have adduced no proof to support recovery of any actual damages. See ECF 60 17-18. Plaintiffs do not respond to this argument, and the Court's review of the summary judgment record reveals no colorable basis for plaintiffs to prove damages. Accordingly, the Court grants summary judgment in

Brooks's favor on the damages component of plaintiff's infringement claim.

**C. Defendants' Counterclaims**

Brooks presses two conversion counterclaims on summary judgment, one pled under New York law and another under North Carolina law. Brooks' papers make the conclusory assertion that North Carolina law applies, see ECF 65 at 34 n. 6, because that is where the film (and photos) were shot, but neither party makes an actual choice of law argument. However, the Court need not decide which law applies. The only photo for which Brooks has established ownership is the one for which Horn purported to register a copyright. It is undisputed that Brooks now possesses a copy of that photograph. Beyond that, the facts relevant to the conversion counterclaims are disputed, such as whether Brooks hired Horn to perform photography services and whether Brooks has now been provided with the photographs, see Pls. Resp. Def. SOF ¶ 22 (noting that photos were produced to Brooks in discovery). Accordingly, the cross-motions for summary judgment on the conversion claims are denied.

Finally, Brooks also moves for summary judgment on her copyright infringement counterclaim. To the extent Brooks's motion asks the court to declare her the owner of the disputed photograph of Clarke taken by Horn, see ECF 40 at 19, and to enjoin Horn and Poppington from again seeking to register that photograph, the motion is granted. See ECF 40 ¶ 54. Brooks's motion with respect to her third counterclaim is otherwise denied.

## IV. Conclusion

Plaintiffs' motion for summary judgment is denied in full. Brooks's motion for summary judgment on plaintiffs' infringement claim is granted, so plaintiffs' complaint is hereby dismissed with prejudice. Brooks's motion is also granted in part with respect to her third counterclaim, insofar as she seeks (i) a declaration that she is the owner of the disputed photograph, ECF 40 at 19, because it is a derivative work of her copyright in the film Mafietta, and (ii) an injunction entered against Horn and Poppington LLC prohibiting them from again attempting to register the disputed photograph. Brooks's motion is otherwise denied.

Within two weeks of the entry of this order, counsel for the parties are directed to convene a joint phone conference with the Court to either set a trial date on the remaining aspects of Brooks's counterclaims or to inform the Court that these claims are dismissed and final judgment can be entered.

SO ORDERED.

New York, NY
June 13, 2022

JED S. RAKOFF, U.S.D.J.