UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

POPPINGTON LLC and RAQUEL HORN,

      Plaintiffs,

  -v-

EDWYNA BROOKS,

      Defendant.

---

20-cv-8616 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

Defendant Edwyna Brooks moves pursuant to Section 505 of the Copyright Act for an order mandating that plaintiffs Raquel Horn and Poppington LLC ("Poppington") pay $44,496.05 in legal costs fees and costs. See Defs. Mem. Supp. Mot. Attorneys Fees ("Defs. Mem.") at 1, Dkt. 78-1. For the reasons stated below, the Court grants her motion.

I. **Legal Standard**

The Copyright Act empowers a district court to "in its discretion . . . allow the recovery of full costs by or against any party" and to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C § 505. Courts thus have "wide latitude to award attorney's fees based on the totality of circumstances in a case." Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 203 (2016). While "[t]here is no precise formula" for determining whether to award a prevailing party attorneys' fees and courts instead should exercise their "equitable discretion," various "nonexclusive factors," such as "frivolousness, motivation, objective unreasonableness (both in the

factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence . . . may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act. . . ." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 & n. 19 (1994). Chief among such "purposes of the Copyright Act" is "to encourage the production of original literary, artistic, and musical expression for the good of the public." Id. at 524. In determining whether to award such fees, "[p]revailing plaintiffs and prevailing defendants are to be treated alike. . . ." Id. at 534. While the "objective reasonableness" of a party's litigation positions are "an important factor in assessing fee applications," they are "not the controlling one," such that "a court may award fees even though the losing party offered reasonable arguments. . . ." Kirtsaeng, 579 U.S. at 208-09.

II. **Procedural History**

The facts underlying this dispute are laid out at greater length in the Memorandum Order denying in full plaintiffs' motion for summary judgment and granting in part defendant's counter-motion. See generally Memorandum Order on Summary Judgment ("Summary Judgment Order"), Dkt. 75. As relevant here, defendant Brooks is the author of the Mafietta series of novellas, which she turned into a short film of the same name that was filmed in summer 2015. Id. To make the film, she relied on Horn's boyfriend Damon Dash, Horn and Dash's jointly owned company Poppington, and -- in at least some capacity -- Horn. Id. at 2. Horn, who was paid $600 in connection with the film, took

hundreds of photographs while on set during filming. Id. At the summary judgment stage, Brooks contended that Horn took these photographs as part of her paid work on set in order to assist actors in maintaining wardrobe continuity, while plaintiffs instead argued that Horn was merely photographing "things that she found interesting or artistically pleasing" not pursuant to any agreement to do any specific thing. Id. at 2-3.

Months after making Mafietta the film, in October 2015, Brooks self-published a book on Amazon entitled Mafietta: the Trilogy. Id. at 3. The cover of that book and a poster for the film included an image that appears very similar to one of the photographs taken by Horn. Id. at 7-8. Horn contends the cover and poster image made use of the photograph she took, while Brooks instead contends that her designer created the cover and poster image using a still taken from the raw camera footage from filming. Id. at 3, 7-8. Either way, Horn did not make any objection to Brook's potential use of one of her photographs for almost four years after the book and poster's publication, until she sent an email to Brooks' lawyer in July 2019. See Plaintiffs' Rule 56.1 Statement ¶¶ 9-10, Dkt. 71.

While Horn contends she did not learn of Brooks' suspected use of her image until July 2019, this email -- which copied Brooks' boyfriend Dash, id. -- came in the midst of a separate lawsuit filed by Brooks in February 2019 against Dash and Dash and Horn's jointly owned company Poppington over their distribution of the Mafietta film. That lawsuit resulted in this Court's determination following a bench

trial that Brooks owned the copyright to the Mafietta film, its award of $300,000 in damages to Brooks, and its enjoining Dash and Poppington from employing the Mafietta film without Brooks' consent. See Brooks v. Dash, No. 19-cv-1944, Findings of Fact and Conclusions of Law (April 14, 2020), Dkt. 71.

Days following this Court's findings against her boyfriend and their jointly owned company regarding the Mafietta film, Horn, in April 2020, obtained a copyright registration for the photograph at the heart of this suit. Summary Judgment Order at 8-9. Horn then brought this lawsuit, alleging that Brooks' suspected use of her photograph on the 2015 book cover and poster infringed her copyright to the photograph. Id. at 5. Brooks subsequently filed various counterclaims. Id. at 5.

This Court entered summary judgment in favor of Brooks as to Horn and Poppington's copyright claim. Id. at 15. Although the Court found that the absence of any written agreement between Horn and Brooks defining the scope of Horn's duties (if any) on-set precluded any finding that the photograph that Horn contends was infringed was actually a work-for-hire, id. at 8-10, and although the Court found there were genuine disputes of fact as to whether the photograph was ever copied by Brooks and incorporated into the poster and book cover, id. at 7-8, the Court determined that the photograph was a "derivative work . . . based upon" the Mafietta film and therefore owned by Brooks, id. at 10-11 (quoting 17 U.S.C. § 101). Separately, this Court found that Horn's complaint could have been dismissed for inadequate

4

pleading, because while the infringement Horn meant to allege plainly concerned the image on the cover of Brooks' book Mafietta: The Trilogy, Horn's complaint in fact alleged infringement in connection with a separate book -- Mafietta: Rise of a Female Boss -- published several months before Horn even took the photograph she contends was infringed. Id. at 5-7 (noting that Horn's Complaint never in fact named the correct book). Further, this Court found that, even if the photograph were not a derivative work owned by Brooks and even if Horn were to have successfully established infringement, Horn would not have been entitled to any money damages -- no statutory damages, because the alleged infringement occurred before any copyright registration, and no actual damages, because plaintiffs failed to adduce any evidence of actual damages. Id. at 12-13.

Following this Court's summary judgment ruling, the parties informed the Court that they had settled Brooks' remaining counterclaims, and the Court accordingly dismissed the case with prejudice, while granting Brooks leave to file a motion for attorneys' fees under 17 U.S.C. § 505. See Order, Dkt. 76. Plaintiffs subsequently filed that motion. See Mot, Dkt. 78.

### III. Analysis

Brooks is plainly a "prevailing party" eligible for an award of attorney's fees under Section 505 of the Copyright Act. 17 U.S.C. § 505. Horn does not materially dispute this point, nor could she; while Brooks ultimately settled her remaining counterclaims, this Court granted summary judgment in Brooks' favor on Horn's sole affirmative

5

claim for copyright infringement. Summary Judgment Order at 15; see Fogerty, 510 U.S. at 526-27 (noting that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright").

Of course, prevailing party status does not entitle Brooks to a fees award. But the Court easily concludes such an award is merited here after considering the history of this case in light of the Copyright Act's purposes to promote the creation of valuable work, as well as the "frivolousness, motivation, [and] objective unreasonableness (both in the factual and in the legal components of the case)" of plaintiffs' suit "and the need in particular circumstances to advance considerations of compensation and deterrence." Fogerty, 510 U.S. at 534 n. 19.

In particular, the Court cannot blind itself to the history of this case, which concerns alleged infringement beginning in 2015 of a photograph taken the same year, and yet as to which neither Horn nor Poppington expressed any interest for several years -- until, that is, Horn's boyfriend and Poppington's other owner Dash, as well as Poppington (which Horn and Dash jointly owned), were sued by Brooks for infringing Brooks' copyright to the Mafietta film. The 2019 email in which Horn first accused Brooks of infringing in connection the 2015 photograph came in the middle of that litigation (and Dash was copied on the email), strongly suggesting Horn only took interest in this Brooks' potential use of the 2015 photograph because Brooks was

6

suing Dash and Poppington over her rights to the film. That impression is reinforced by the fact that Horn only sought and obtained a copyright registration for the photograph mere days after this Court ruled against Dash and Poppington in the prior lawsuit. This history strongly suggests Horn filed this lawsuit in order to retaliate against Brooks for her earlier (entirely meritorious) action against Dash and Poppington.

This impression is reinforced by the fact that Horn and Poppington, in bringing this suit, could not have obtained any damages even if they brought a meritorious claim. Summary Judgment Order at 12-13. Because Horn only registered the relevant photograph in 2020 (shortly after this Court ruled against Dash and Poppington in the prior action), Horn could not have recovered statutory damages for infringement beginning many years before that date. Id. And Horn and Poppington failed to introduce any evidence of actual damages, id., presumably because there were none. So -- even assuming plaintiffs had brought a meritorious claim -- they likely knew from the outset that the best they could obtain would be declaratory or injunctive relief relating to alleged infringement that had in fact begun many years previously, and in which they had taken no interest until Brooks sued Poppington and Dash.

This background is highly relevant both to this Court's consideration of several of the specific Fogerty factors (most obviously, Horn's motivation for this suit, but also the suit's frivolousness and considerations of compensation and deterrence) and

also, more broadly, to this Court's evaluation of how an award of fees in this case would further or undermine the Copyright Act's goals of promoting the creation of original works. Given the evidence that this suit was meant at least in significant part to retaliate against Brooks for enforcing her own rights to the Mafietta film, the Court concludes that an award of fees in Brooks' favor substantially furthers the purposes of the Copyright Act by ensuring that creators are not deterred from enforcing their own rights by the prospect of having to face pretextually retaliatory suits.

Of course, this context would not matter so much if Horn and Brooks' claim were meritorious, but, as explained in this Court's summary judgment order, it was not. Summary Judgment Order at 10-11. Importantly, even assuming arguendo that Horn's position that her photograph was not derivative of the Mafietta film was neither frivolous nor unreasonable, this Court independently found that Horn's complaint could have been dismissed for inadequate pleading, as it in fact only alleged infringement in connection with Brooks' earlier published book Mafietta: Rise of a Female Boss, which was published n March 2015 -- before the photograph Horn alleges was infringed was even taken. Summary Judgment Order at 5-6. While the subsequent record has made clear that Horn almost certainly meant to accuse infringement with connection to Brooks' later book Mafietta: The Trilogy, Horn's failure to undertake even a basic due diligence as to the facts actually alleged in her complaint before suing over alleged infringement that could not possibly have occurred indicates both the

frivolousness and unreasonableness of her suit, as well as the need to compensate Brooks for defending the action and to deter similar litigation.

Everything the Court has stated so far is plain merely from its summary judgment order, which of course made no finding as to disputed issues and instead drew all reasonable inferences in favor of the party resisting summary judgment. Summary Judgment Order at 5. In determining whether to award fees under 17 U.S.C. § 505, however, the Court is not so limited. For instance, putting aside the Court's finding that the photograph was a derivative work, plaintiffs would have needed, in order to prevail on their infringement claims, to establish their ownership of the photograph in question. See Abdin v. CBS Broad. Inc., 971 F.3d 57, 66 (2d Cir. 2020). While Horn's copyright registration is prima facie evidence of ownership, Horn's copyright application stated the work was first published on January 1, 2016 -- an assertion she contradicted in deposition testimony, when she testified that she did not remember ever publishing it. Summary Judgment Order at 9, 13. While it is certainly not beyond dispute that Brooks could have shown that "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration," 17 U.S.C. § 411(b)(1)(B), a jury might plausibly have concluded for this or other reasons that Horn did not in fact own the photograph, even putting aside its status as a derivative work.

Horn finally argues that there is no need for deterrence in this case because legal fees have previously been awarded to a different

plaintiff against Poppington LLC and Dash in the case Webber v. Dash, et al., 19-cv-610. Pls. Opp., Dkt. 79 at 7. Horn, who filed this lawsuit, was not a party to that litigation, and moreover, the fact that a court in a separate lawsuit awarded fees against Poppington based on its litigation conduct in that case would seem more likely to support, rather than undermine, the Court's conclusion that an award of fees here is necessary for the sake of deterrence.

For the aforementioned reasons, the Court easily concludes that an award of costs and attorneys' fees is merited in this case. As to the amount, Brooks' counsel Christopher Brown has submitted an affidavit along with the invoices he sent Brooks, which show he has worked 85.9 hours on the case. See Brown Aff., Dkt. 78-2. That amount seems highly reasonable for a case that included briefing a motion to dismiss, answering a complaint, conducting discovery, and prevailing at summary judgment, and neither the hourly rate charged ($500) nor the separate request for $1,546.05 in expenses strikes this Court as at all unreasonable.

Plaintiffs do not argue in their opposition that either the amount of fees or the amount of costs is excessive, and the Court independently concludes that the amounts are reasonable based on its review of Mr. Brown's affidavit as well as accompanying invoices filed alongside it. Id. Ex. A. Accordingly, the Court hereby grants Brooks' motion and awards her $44,496.05 in legal fees and costs. The Clerk is directed to close Brooks' motion (Dkt. 78) on the docket. As all other claims have been either adjudicated or settled, see Summary

Judgment Order, Dkt. 75; Order dated 6/28/22, Dkt. 76, the Clerk is also directed to close the case.

    SO ORDERED.

New York, NY  
March 22, 2023

                                            JED S. RAKOFF, U.S.D.J.